IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Jailen White, ) | Case No. 7:24-cv-00816-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Covington Specialty Insurance ) | |
| Company, The Burlington Insurance ) | |
| Company, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on a motion for judgment on the pleadings filed by Defendant The Burlington Insurance Company ("Burlington") on August 7, 2024. [Doc. 28.] Plaintiff filed a response in opposition on September 4, 2024 [Doc. 34], and Burlington filed a reply on September 18, 2024 [Doc. 38]. This matter is now ripe for review.

**BACKGROUND**[1]

On the evening of July 12, 2019, and into the early morning hours of July 13, 2019, Plaintiff was performing at a nightclub called Club Rehab in Spartanburg, South Carolina, as a paid performer. [Doc. 1-1 at 3–4 ¶¶ 6, 9–10.] Club Rehab was owned and operated by Rehab Experience, LLC ("Rehab"), of which Billy Webber ("Webber") was the sole member. [*Id.* at 3 ¶¶ 7–8.] Sometime in the early morning hours of July 13, 2019, an altercation broke out in Club Rehab, during which a shot or shots were fired by an

---

[1] The facts included in this Background section are taken directly from the Complaint. [Doc. 1-1 at 2–11.]

unknown assailant and Plaintiff was struck in the back by a bullet, resulting in paralysis. [*Id*. at 4 ¶ 11.]

On March 30, 2021, Plaintiff filed a personal injury action in the Spartanburg County Court of Common Pleas against Webber, Rehab, and others, alleging that they were negligent in failing to provide adequate security on the premises, which contributed to the criminal acts of the assailant who injured Plaintiff (the "Underlying Lawsuit"). [*See id*. at 4 ¶ 12, 13–20.] Plaintiff filed an amended complaint in the Underlying Lawsuit on May 27, 2021 (the "Underlying Complaint"). [*Id*. at 26–33.]

At the time of the altercation, Webber and Rehab were insured under two policies providing bodily injury liability coverage: (1) a commercial general liability policy, policy no. VBA703908 00 (the "Covington Policy"), and (2) a liquor liability policy, policy no. 684B002379 (the "Burlington Policy") (collectively, "the Policies"). [*Id*. at 5 ¶ 15; *see id*. at 35–134, 136–75.] Covington and Burlington were provided with copies of the complaint and amended complaint in the Underlying Lawsuit but declined liability coverage and defense counsel to Webber and Rehab under the Policies. [*Id*. at 5 ¶¶ 16–18.] Webber and Rehab ultimately defaulted in the Underlying Lawsuit, and a default damages hearing was held on September 14, 2023. [*Id*. at 5–6 ¶¶ 19–20.] On September 27, 2023, the state judge entered an order and judgment awarding Plaintiff damages in the amount of $18,152,533.00. [*Id*. at 6 ¶ 22.] On October 23, 2023, Webber and Rehab assigned to Plaintiff "any and all rights, privileges, entitlements, causes of action, whether in contract, tort, under statutory law, under common law or otherwise and whether existing now or in the future, that [Webber and Rehab] have or may have against [Covington] and

[Burlington] for coverage or benefits under [the Policies] in relation to the July 12–13, 2019 incident" (the "Assignment Agreement").  [*Id.* ¶ 23; *see id.* at 204–09.]

As an assignee of Webber and Rehab, Plaintiff brought the instant action against Covington and Burlington, asserting breach of contract claims under the Assignment Agreement for their failure to indemnify in the Underlying Lawsuit.  [*Id.* at 7–11 ¶¶ 26–46.]

## APPLICABLE LAW

**Judgment on the Pleadings Standard**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Pa. Nat'l Mut. Cas. Ins. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted).  "Thus, [t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false."  *Integon Gen. Ins. v. Bartkowiak ex rel. Bartkowiak*, No. 7:09-cv-03045-JMC, 2010 WL 4156471, at *2 (D.S.C. Oct. 19, 2010) (alteration in original) (internal quotation marks omitted).  A court should apply the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6) and should grant a motion for judgment on the pleadings "only if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Lewis v. Excel Mech., LLC*, No. 2:13-cv-281-PMD, 2013 WL 4585873, at *2 (D.S.C. Aug. 28, 2013) (internal quotation marks omitted); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–

06 (4th Cir. 2002) (noting that the standard applicable for motions made under Rule 12(c) is the same as for those made under Rule 12(b)(6)).

**Law Relating to Insurance Policies**

In South Carolina, the question of whether coverage exists under an insurance policy is a matter of law. *See Williams v. Gov't Emps. Ins.*, 762 S.E.2d 705, 709 (S.C. 2014). The insured bears the burden of proving its claim falls within the policy's coverage. *See Gamble v. Travelers Ins.*, 160 S.E.2d 523, 525 (S.C. 1968). "Insurance policies are subject to general rules of contract construction" and policy language must be given "its plain, ordinary and popular meaning." *Diamond State Ins. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995). While "[a]mbiguous or conflicting terms . . . must be construed liberally in favor of the insured," courts may not "torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Id*. "[R]ules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed." *McPherson By & Through McPherson v. Mich. Mut. Ins.*, 426 S.E.2d 770, 771 (S.C. 1993).

## **DISCUSSION**

Burlington argues that Plaintiff's breach of contract claim against Burlington fails as a matter of law because the Burlington Policy does not provide coverage for the claims against Rehab and Webber in the Underlying Lawsuit. [Docs. 28; 28-1.] Specifically, Burlington argues that the Burlington Policy provides coverage only for injuries related to the sale, service, or furnishing of an alcoholic beverage, which Plaintiff did not allege in the Underlying Lawsuit, and that even if coverage were triggered, the Burlington Policy's "Assault, Battery or Other Physical Altercation" exclusion (the "Assault & Battery

Exclusion") bars coverage.[2]  [*Id.*]  In response, Plaintiff argues that the language of the Burlington Policy should be broadly construed in favor of coverage; that the incident in question arose out of Rehab and Webber's business of selling, serving, and furnishing alcoholic beverages; and that the Assault & Battery Exclusion is against South Carolina public policy.  [Doc. 34 at 6–12.]

**The Burlington Policy**

The Court begins with the relevant policy language.  The Burlington Policy provides in its "Insuring Agreement" that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply.

[Doc. 1-1 at 156.]  Also relevant, the Assault & Battery Exclusion bars coverage for "injury" that is:

> **(1)** Expected or intended from the standpoint of any insured.
>
> **(2)** Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
>
> **(3)** Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."
>
> **(4)** Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed

---

[2] Burlington also argues that any bad-faith claim asserted by Plaintiff fails because bad-faith claims are not assignable under South Carolina law.  [Docs. 28 at 6; 28-1 at 29.]  Plaintiff has clarified that he has not alleged a bad-faith claim [Doc. 34 at 13–14], and the Court therefore need not address this argument.

>or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

[*Id.* at 144.]  The Assault & Battery Exclusion also expressly provides that it

>applies to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

[*Id.*]  The exclusion defines "[a]ssault" as "any attempt or threat to inflict 'injury' upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm" and defines "[b]attery" as "physical contact with a person without his or her consent that entails some 'injury' or offensive touching."  [*Id.*]

**The Underlying Lawsuit Failed to Trigger Coverage**

Burlington first argues that the Burlington Policy provides coverage only for "those sums that the insured becomes legally obligated to pay as damages because of 'injury' . . . if liability for such 'injury' is imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage."  [Doc. 28-1 at 15 (internal quotation marks omitted).]  Because the Underlying Complaint does not contain allegations seeking to impose liability against Rehab or Webber based on their sale, service, or furnishing of alcohol, Burlington argues that it was justified in denying coverage in the Underlying Lawsuit.  [*Id.* at 15–16.]  The Court agrees.

Upon review of the plain language of the Burlington Policy, the Court concludes that the Underlying Complaint fails to trigger coverage under the Burlington Policy.  The allegations in the Underlying Complaint do not allege or even suggest that the sale,

6

service, or furnishing of alcohol contributed to the altercation, shooting, or Plaintiff's injury—in fact, the words "alcohol" and "alcoholic beverage" do not appear in the Underlying Complaint. [*See generally* Doc. 1-1 at 26–33.] The fact that Club Rehab sold alcohol—which is not even explicitly alleged—is of no consequence when Plaintiff's specific allegations are that Rehab and Webber were negligent because they failed "to provide adequate security on the premises [which] contributed to the criminal acts of the assailant which caused Plaintiff's physical injury."[3] [*Id*. at 31 ¶ 20.]

---

[3] The Underlying Complaint elaborates on this claim by alleging the Rehab and Webber breached their duty to Plaintiff by:

    a.    Failing to provide adequate security on the subject premises;

    b.    Knowingly subjecting Plaintiff and other invitees of the subject premises to an unreasonable risk of serious physical harm;

    c.    Failing to exercise reasonable care to provide a safe environment for the invitees of the subject premises;

    d.    Failing to provide proper and adequate surveillance of the subject premises;

    e.    Permitting or otherwise ignoring criminal activity on the subject premises;

    f.    Failing to properly train its employees, servants, and agents in recognizing and correcting dangerous conditions and risks to invitees of the subject premises;

    g.    Failing to monitor the performance of its security personnel to ensure the safety of invitees of the subject premises;

    h.    Failing to monitor the performance of its contractors hired to provide security of the subject premises;

    i.      Failing to hire and monitor competent security personnel to ensure the safety of invitees of the subject premises;

    j.      Failing to implement and follow security measures commensurate with the recommendations of security experts and consultants;

    k.     Failing to monitor the performance of its entertainment promoters of the premises;

    l.      Failing to conduct pat-down checks at the doors or entry points of the subject premises;

    m.    Failing to remove unauthorized persons from the subject premises;

    n.     Failing to adequately control a crowd of dangerous persons in the subject premises;

    o.     Violating crowd restrictions of the subject premises;

    p.     Failing to have adequate guards or patrols on the subject premises so as to deter dangerous activity on the subject premises;

    q.     Failing to warn invitees of the subject premises, including Plaintiff, of the risks of criminal activity on same;

    r.      Failing to maintain appropriate metal detection devices on the subject premises so as to prevent armed individuals from entering same;

    s.      Failing to maintain [] policies, procedures, or [a] system of investigating, reporting, and warning of criminal activity on the subject premises;

    t.      Permitting unauthorized persons to come onto the subject premises with weapons; and

    u.     All other acts of negligence as may be shown at the time of trial.

And although Plaintiff argues that the presence of alcohol impliedly contributed to the violence that ensued [*see* Doc. 34 at 7–8], it is not the Court's role to contort the reading of the Policy language to cover allegations that are not clearly stated in the Underlying Complaint, *see S.C. Ins. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990) ("An insurer's obligation under a policy of [] insurance is defined by the terms of the policy and cannot be enlarged by judicial construction."). Accordingly, the Court declines to stretch the reading of the Burlington Policy language to cover Plaintiff's claims in the Underlying Complaint that are not based on the sale, service, or furnishing of alcohol, and concludes that Burlington properly denied coverage for Plaintiff's claims against Rehab and Webber in the Underlying Lawsuit.

**The Assault & Battery Exclusion**

Burlington also argues in the alternative that, even if coverage were triggered under the Burlington Policy, Plaintiff's claims are barred by the Assault & Battery Exclusion. [Doc. 28-1 at 16–28.] Plaintiff argues that the Assault & Battery Exclusion is against South Carolina's public policy and cannot bar coverage. [Doc. 34 at 8–12.] Although the Court concludes that Plaintiff's claims are not covered under the Burlington Policy, it will briefly discuss the applicability of the Assault & Battery Exclusion.

As discussed above, under South Carolina law, "[w]hile a policy should be liberally construed in favor of coverage and against exclusion, courts are not permitted to torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy." *Sphere Drake Ins. v. Litchfield*, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993).

---

[Doc. 1-1 at 30–31 ¶ 19.]

Courts applying South Carolina law have often allowed "assault and battery" exclusions to bar coverage for claims arising out of physical altercations like the altercation at issue in the Underlying Lawsuit.  *See, e.g.*, *St. Paul Reinsurance Co. v. Riviello*, 296 F. App'x 377, 378–80 (4th Cir. 2008) (affirming the district court's ruling under South Carolina law on summary judgment that an insurance company had no duty to defend restaurant owner against patron's claims that he was assaulted at the restaurant, as such claims fell under the policy's "assault and battery" exclusion); *Sphere Drake*, 438 S.E.2d at 277 (reversing the trial court's finding that the "assault and battery" exclusion was unenforceable and holding that under the general rules of contract interpretation, the exclusion unambiguously applied to bar coverage for negligence claims against the insured); *Catlin Specialty Ins. Grp. v. RFB, Inc.*, No. 2:16-3135-RMG, 2017 WL 2493125, at *2 (D.S.C. June 8, 2017) (holding that an "assault and battery" exclusion barred the plaintiff's negligence claims against a bar, noting that "plaintiffs often attempt to plead into coverage by asserting negligence—attempts federal and state courts routinely reject" and that "plaintiffs cannot mischaracterize intentional acts as negligence claims in order to avoid the exclusions contained within the insurance policy" (internal quotation marks omitted)).

The Court disagrees with Plaintiff's argument that these types of exclusions are against public policy.  Plaintiff argues that S.C. Code Ann. § 61-2-145, which mandates that businesses purchase liquor liability insurance, is intended to "protect bar and/or club customers like Plaintiff [] from injury arising at such business establishments" and that it is therefore against public policy to enforce the Assault & Battery Exclusion here.  [Doc. 34 at 8–10.]  The Court, however, cannot find any legal support for such a conclusion and

Plaintiff provides none. To the contrary, the statute merely mandates the coverage a licensee must obtain, not the terms an insurer must offer. *Cf. Northfield Ins. v. Evian HPR*, No. 9:01-883-23, 2002 WL 32332186, *2–4 (D.S.C. Aug. 28, 2002) (holding that statute that required "council of co-owners" to insure the defendant against risks did not void an exclusion in the policy because, even if risk was required to be covered, the duty to procure coverage fell on the insured, not the insurer), *aff'd sub nom., Northfield Ins. v. Evian Horizontal Prop. Regime*, 68 F. App'x 487 (4th Cir. 2003).

Here, the Assault & Battery Exclusion provides in part that claims based on injury that "aris[es] in whole or in part out of any 'assault' or 'battery' committed or attempted by any person" are barred under the Burlington Policy. [Doc. 1-1 at 144.] It is clear under the definitions of "assault" and "battery" [*see id*.] that the altercation and gun shots that occurred at Club Rehab the morning of July 13, 2019—which formed the basis of Plaintiff's negligence claim against Rehab and Webber in the Underlying Lawsuit—constitute an assault and battery under the Burlington Policy. Therefore, the claims asserted against Rehab and Webber in the Underlying Lawsuit are expressly excluded under the Assault & Battery Exclusion.

## **CONCLUSION**

Wherefore, based upon the foregoing, Burlington's motion for judgment on the pleadings [Doc. 28] is GRANTED, and Burlington is DISMISSED from this action with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

December 2, 2024
Greenville, South Carolina